**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THERESE CARVER and JOSH HARDY, individually and as parents and next friends of A.H., deceased | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 10-CV-642-JHP-PJC<br>) |
| KIA MOTORS CORPORATION | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant Kia Motors Corporation's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Eric Mayes and Brief in Support (Motion to Exclude),[1] Plaintiffs' Objection and Response to Defendant's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Eric Mayes and Brief in Opposition (Plaintiffs' Objection),[2] and Defendant Kia Motors Corporation's Reply in Support of its Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Eric Mayes.[3] The Court rules upon this Motion in conjunction with Defendant Kia Motors Corporation's Motion for Summary Judgment and Brief in Support (Motion for Summary Judgment),[4] Plaintiffs' Response to Defendant's Motion for Summary Judgment and Brief in Support (Plaintiffs' Response),[5] and Defendant Kia Motors Corporation's Reply in Support of its

---

[1] Docket No. 53

[2] Docket No. 70.

[3] Docket No. 74.

[4] Docket No. 44.

[5] Docket No. 60.

Motion for Summary Judgment (Defendant's Reply in Support of Motion for Summary Judgment).[6]

For the reasons set forth below, Defendant Kia Motors Corporation's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Eric Mayes is **DENIED**.[7] Defendant Kia Motors Corporation's Motion for Summary Judgment is **GRANTED**.[8]

## **BACKGROUND**

A. Undisputed Factual Background[9]

This instant case arises from an automobile accident that occurred on May 14, 2010, when a 1999 Kia Sephia driven by Marty Bowman crossed left of center on State Highway 10 and collided with an oncoming Freightliner tractor and trailer.[10] At the time of the collision, the Kia had three passengers in addition to the driver, including Plaintiffs' child A.H.[11] A.H. was removed from life support and died on May 20, 2010 as a result of traumatic brain injury sustained in the accident.[12]

Plaintiffs initially filed this manufacturers' products liability action on September 14, 2010.[13] Plaintiffs ultimately allege both design defect and negligent design and/or assembly under strict

---

[6]Docket No. 63.

[7]Docket No. 53.

[8]Docket No. 44.

[9]The following facts are either not specifically controverted by Plaintiffs in accordance with Local Civil Rule 56.1(c), or are described in the light most favorable to Plaintiffs. Immaterial facts are omitted.

[10]Motion to Compel at 1-2, Docket No. 65.

[11]*Id.* at 2.

[12]*Id. See also* Discharge Documentation, Plaintiffs' Response at 1, Docket No. 60-3.

[13]Petition at 2-4, Docket 2-1.

2

products liability, and include an additional allegation of simple negligence.[14] Plaintiffs do not contend that any condition of the subject vehicle caused the accident.[15]

In expert disclosures, Plaintiffs identified Eric Mayes as the only witness who would testify regarding the design, manufacture, and condition of the subject vehicle.[16] In both his expert report and deposition testimony, Mr. Mayes declined to offer an opinion as to whether any part of the subject vehicle was defective in either design or manufacture.[17] Mr. Mayes also testified that he had no criticism of the seats, seat backs, or any of their mechanisms or component parts.[18]

In his deposition testimony, Mr. Mayes testified that he believed the steering wheel detached dynamically during the accident and became a projectile.[19] However, at the time of the deposition, Mr. Mayes had no criticism of the material used in the component parts of the steering column, steering wheel, or steering assembly; and he could not offer an opinion on whether the separation was due to any defect.[20] Further, because the steering wheel has been missing since shortly after the accident, Mr. Mayes could not calculate the path of the wheel, and could not render an opinion as to who or what the steering wheel may have contacted after it separated from the steering column.[21]

---

[14]*See* First Amended Petition/Complaint at 2-4, Docket No. 28.

[15]Motion for Summary Judgment at 3, No. 2, Docket No. 44.

[16]Motion for Summary Judgment at 4, No. 7, Docket No. 44.

[17]*Id.* at 4, No. 8.

[18]*Id.* at 4, No. 10.

[19]*See* Plaintiffs' Response at 7, Docket No. 60 (*citing* Eric Mayes Deposition Testimony (Mayes Deposition) 116:14-117:7).

[20]Motion for Summary Judgment at 4, No. 12, Docket No. 44.

[21]*Id.* at 4-5.

When asked about the injury to A.H., Mr. Mayes was unable to offer an opinion as to what, if anything, came into contact with A.H, what caused A.H.'s injuries, or at what point during the accident the injury to A.H. occurred.[22] Mr. Mayes did state that his opinions were subject to change subsequent to any further discovery.[23] However, Plaintiffs failed to offer any follow-up opinion during the discovery period.

B. Relevant Procedural Background

On December 5, after receiving an extension of time to respond to Defendant's Motion for Summary Judgment, Plaintiffs moved for an extension of all deadlines, claiming that previously undisclosed discovery issues had prevented Mr. Mayes from completing a comprehensive report.[24] At the direction of the Court, Plaintiffs filed a motion to compel the disputed discovery.[25] After *in camera* review of the disputed documents, and considering Plaintiffs' untimely request for the extension of discovery, the Court denied both Plaintiffs' motion for an extension of the discovery deadline and Plaintiffs' motion to compel.[26] As such, the Court reviews only that evidence which was produced on or before the original discovery deadline.

---

[22]*Id.* at 5, No.'s 14-15.

[23]Mayes Deposition 58:20-59:20.

[24]*See* Plaintiffs' Motion for Extension of the Discovery Deadline and All Other Remaining Deadlines, and for Continuance and Resetting of the Pretrial and Trial Dates at 3, Docket No. 47.

[25]*See* Plaintiffs' Motion to Compel Document Production and Deposition Responses and Brief in Support, Docket No. 65.

[26]Amended Opinion and Order at 11, Docket No. 77. After discussion of Rules 6 and 16, and thorough consideration of the relevant factors concerning whether discovery should be reopened, as discussed in *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507,1514 (10th Cir. 1990), the Court found Plaintiffs failed to provide good cause for either extension or the reopening of discovery. *See* Amended Opinion and Order at 5-11, Docket No. 77.

**DISCUSSION**

**A. Admissibility of Expert Testimony**

Before the Court can reach whether Plaintiffs' evidence can withstand Defendant's Motion for Summary Judgment, it must first rule on Defendant's motion to exclude Mr. Mayes' testimony from the Court's consideration.[27] Defendant challenges the testimony as both irrelevant and unhelpful to the Court's inquiry.[28]

The 2000 amendment to Federal Rule of Evidence 702 codified the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.* and provided the standard for admissibility of expert opinion testimony: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[29]

In determining the admissibility of expert testimony the Court must initially determine whether the proffered expert is qualified to offer an opinion on the pertinent issues of the case.[30] A qualified expert possesses the necessary knowledge, skill, experience, training, or education relevant

---

[27] *See Argo v. Blue Cross & Blue Shield of Kan. Inc.*, 452 F.3d 1193,1199 (10th Cir.2006) ("a court necessarily may consider only evidence that would be available to the jury"). *See also Treviso v. Adams*, 455 F.3d 1155, 1160 (10th Cir.2006).

[28] *See* Motion to Exclude at 6-8, Docket No. 53. Defendant also states it reserves the right to challenge Mr. Mayes' qualifications and methodology should he render a new report, but goes on to freely attack both Mr. Mayes' qualifications and methodology. In its brief, unsupported challenge, Defendant claims Mr. Mayes' lacks qualification to testify as to any defect in the steering column, steering assembly, or any steering component and attacks Mr. Mayes' methodology, citing his lack of case specific testing. *Id.* at 9.

[29] Fed.R.Evid. 702.

[30] *Ralston v. Smith & Nephew Richards Inc.,* 275 F.3d 965, 969 (10th Cir.2001).

to the facts at issue.[31] The Court must then conduct a two-pronged inquiry as to the reliability and relevance of the proffered testimony.[32]

The reliability prong is determined by considering "whether the reasoning or methodology underlying the testimony is scientifically valid."[33] A sponsoring party need not prove that the expert's testimony is undisputed or generally accepted, merely that the method employed by the expert in reaching the conclusion is both scientifically sound and that the expert's opinion is based on "facts which sufficiently satisfy Rule 702's reliability requirements."[34] The relevance prong requires that the proposed testimony be sufficiently "relevant to the task at hand."[35] This is determined by considering "whether the reasoning or methodology properly can be applied to the facts at issue."[36]

Looking first to Mr. Mayes' qualifications, the Court notes Mayes' education includes both a Bachelors of Science in Mechanical Engineering and a Masters of Science in Biomedical Engineering.[37] Further, Mr. Mayes has specific training in accident reconstruction, crash data retrieval and he claims consulting expertise in the areas of vehicle occupant kinematics and injury

---

[31] *Id.*

[32] *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1232 (10th Cir.2004).

[33] *Daubert,* 509 U.S. 579, 592-93, 113 S.Ct 2786, 125 L.Ed.2d 469 (1993).

[34] *See Truck Ins. Exch. v. Magnetek, Inc.,* 360 F.3d 1206, 1210 (10th Cir.2004).

[35] *Daubert,* 509 U.S. at 592-93, 597. *See also Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct 1167, 143 L.Ed.2d 238 (1999).

[36] *Id.*

[37] *See* Mayes CV, Motion to Exclude at 13, Docket No. 53-4.

6

causation biomechanics.[38]  Considering these qualifications, the Court finds Mr. Mayes possesses the minimum necessary knowledge, skill, experience, training and education relevant to the complex engineering and biomechanical facts at issue and is qualified to render an opinion on the evidence in this case.

Defendant challenges Mr. Mayes' testimony largely on the basis of relevance and before any substantial methodology challenges under *Daubert*. Lacking solid argument from either side on Mr. Mayes' methodology, the Court accepts, *arguendo,* that the methods used by Mr. Mayes in reaching the meager findings before this Court meet the reliability standard set out in *Daubert*.[39]

With that in mind, the Court turns to the relevance of Mr. Mayes' findings.  Although Mayes avoids using the word "defect," he does state that upward movement and steering column rotation in the subject vehicle "is on the higher side of the degree" and opines that this is "a design issue."[40] Further, although he cannot make a definitive opinion as to causation of A.H.'s injuries, he states "I believe [the steering wheel] became detached and it would be a projectile just by the timing of it becoming detached during the course of a dynamic event."[41]

The scope of this testimony is admittedly narrow, however, the opinions he presents

---

[38]*Id.*

[39]In reviewing Mr. Mayes' deposition testimony the Court notes Mr. Mayes testified to inspecting the subject vehicle on two occasions with no plans to re-inspect. Mayes Deposition 50:21-23; 51:1-4. Mayes also did an initial review of the medical and traffic reports in the case; and a review of Insurance Institute of Highway Safety and National Highway Traffic Safety Administration tests of the same and similar vehicles. *Id.* at 64:12-25. Mayes did not perform any case-specific testing, and neither performed nor anticipated performing full accident reconstruction, computer simulations, or any occupant kinematics analysis beyond reviewing Insurance Institute testing.  *Id.* at 11:15-22; 81:14-25; 82:10-25; 83:1-15.

[40]Mayes Deposition at 29:16-20.

[41]*Id.* at 117:3-7.

7

regarding the upward motion and eventual fracture of the steering column apply reason and accepted scientific methodology in an effort to isolate both defect and injury causation, the essential facts at issue. Although, Mayes' testimony alone is inconclusive as to the existence of defect and injury causation, Mayes offers sound opinion evidence of component failure.[42] The Court recognizes that "component failure" does not impute "defect," however, the fact Mayes states with some certainty that the steering wheel detached dynamically and became a projectile brings Plaintiffs' theory of events into the realm of possibility, making the testimony at least minimally relevant to the Court's inquiry. The Court finds Mayes qualified to render expert testimony, and that the minimal testimony provided is both reliable and relevant. Therefore Defendant's motion to exclude the testimony of Eric Mayes from the Court's summary judgment consideration is **DENIED**.

**B. Summary Judgment**

Federal Rule of Civil Procedure 56(c)(2) provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[43] A material fact is one that is essential to disposition of a claim, and a genuine issue is present when the trier of fact could resolve it in favor of either party.[44]

The movant bears the burden of demonstrating the absence of a genuine factual issue, but

---

[42]*Id.* at 71:16-72:5;152:8-17;159:6-10.

[43]Fed. R. Civ. P. 56(c)(2). *See also Jennings v. Badget*, 2010 OK 7, ¶¶ 4-5, 230 P.3d 861, 864.

[44]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

upon demonstrating that no issue exists the non-movant must go beyond the pleadings and set out specific admissible facts that show a genuine issue for trial.[45] If a party bearing the burden of proof at trial lacks sufficient evidence on any essential element of a claim, all other factual issues concerning the claim become immaterial.[46]

In a diversity action, this Court has an obligation to apply Oklahoma law as announced by the highest court of the state.[47] In the absence of an authoritative pronouncement, federal courts, sitting in diversity, must predict how Oklahoma's highest court would rule, following any intermediate state court decision unless other authority convinces this Court that the Oklahoma Supreme Court would decide otherwise.[48]

1. Products Liability Claim

To maintain a manufacturers' products liability claim under Oklahoma law, Plaintiffs must first offer facts that support the product was the cause of A.H.'s injury.[49] Plaintiffs must also offer facts that support the contention (1) that the product was defective when it left the hands of the manufacturer and (2) that defect made the product unreasonably dangerous to an extent beyond that contemplated by the ordinary consumer.[50] The mere possibility that a defect caused the injury is not sufficient; the evidence must support both a probability of defect and a probability that the defect

---

[45] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[46] *Id.* at 322.

[47] *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

[48] *See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984).

[49] *Dutsch v. Sea Ray Boats Inc,.* 1992 OK 155, ¶ 11, 845 P.2d 187, 190.

[50] *Id. See also Nash v. General Motors Corp.*, 2007 OK CIV APP 11, ¶ 7, 153 P.3d 73, 75.

9

caused the injury.[51]

When, as in this case, the effect of a defective product involves complex mechanical, medical, and biomechanical questions "that are beyond a jury's ordinary knowledge and common experience, expert testimony is the best evidence of general causation."[52] Circumstantial evidence may be used to support the probability of a defect, and it is not necessary that evidence be so certain so as to support only one probability and exclude all others.[53] However, without adequate expert testimony as to the existence of defect and causation, the jury is left to speculate about possibilities regarding these essential elements, rather than appropriately focusing on probabilities.[54]

a. Defect Testimony

Plaintiffs contend that a design and/or manufacturing defect caused the steering wheel to dynamically detach from the steering column during the collision, and that the steering wheel became a projectile, hitting A.H. in the head and causing his death.[55] Whether or not the steering wheel or assembly was defective at manufacture and whether or not the steering wheel could have struck A.H. causing injury are questions of fact requiring complex engineering, biomechanical, and kinesthetic analysis that are beyond a jury's ordinary knowledge.[56] As such, Plaintiffs must support this theory with expert testimony attesting to the probability of both defect and causation.

---

[51]*Dutsch,* 845 P.2d at 191. (*internal citation omitted*) ("decision must be based upon probabilities, not possibilities").

[52]*Nash,* 153 P.3d at 75.

[53]*Dutsch,* 845 P.2d at 190.

[54]*Nash,* 153 P.3d at 75 (*citing Dutsch*, 845 P.2d at 191).

[55]Plaintiffs' Response at 10, Docket No. 60.

[56]*See, e.g. Nash,* 153 P.3d at 75.

Plaintiffs offer only the testimony of Eric Mayes to support the contentions of both defect in the subject vehicle and that the defect caused A.H.'s injuries.[57] As discussed previously, Mr. Mayes is unclear at best as to whether he believes there was any defect in the subject vehicle.[58] Mr. Mayes cannot attribute the upward motion and rotation he describes to any manufacturing or design defect.[59] In fact, Mr. Mayes answers that he cannot recall ever testifying that a vehicle or a vehicle component was defective, going so far as to admit that he has been hesitant in the past to use the word "defective."[60]

Although Mr. Mayes need not point to a specific defect in the subject automobile to defeat summary judgment, his testimony should reflect, at a minimum, an opinion that the product failure in question was due to *some* defect in design or manufacture and not merely due to the severity of the accident.[61] Mr. Mayes' testimony fails to reach anything close to such a conclusion.

The Court recognizes that Mr. Mayes' initial report and deposition testimony were preliminary and limited in scope.[62] However, Plaintiffs' failure to provide subsequent reports or

---

[57] *See* Motion for Summary Judgment at 4, No. 7, Docket No. 44. Plaintiffs identify five other witnesses who purport to offer opinion testimony. However, these witnesses offer medical opinion as to the nature of A.H.'s injuries, and none are qualified to testify as to manufacturing defect or actual causation. *See* Witness and Exhibit List, Docket No. 39.

[58] *See supra* p.7.

[59] *See* Mayes Deposition 28:16-25; 29:8-13; 31:3-13.

[60] *Id.* at 31:18-32:2.

[61] *See Bitler*, 400 F.3d at 1238, n.7 ("Not knowing the mechanism whereby a particular agent causes a particular effect is not always fatal to a plaintiff's claim.") (*internal citations omitted*); *but see Kirkland*, 521 P.2d at 1363 (mere happening of accident raises neither presumption of negligence by defendant nor presumption of defectiveness in article involved).

[62] Plaintiffs' Response at 9, Docket No. 60.

testimony before the end of discovery, or to timely ask for an extension, leaves this testimony as the only record evidence supporting Plaintiffs' cause of action. As a result, Plaintiffs offer no evidence that any part of the subject automobile was defective in either design or manufacture when it left Defendant's hands.

The Court soundly rejects Plaintiffs' contention that Defendant must show the absence of defect in order to present a genuine issue of material fact.[63] It is Plaintiffs' who must offer some evidence of defect to create an issue of material fact, and they have not done so.[64] Lacking any evidence of actual defect, Plaintiffs' case fails to demonstrate an element essential to a *prima facie* case of manufacturers' products liability under Oklahoma law. Based on this deficiency alone, summary judgment on Plaintiffs' products liability claims is proper.

b. Causation

Even if the Court were to find that Mr. Mayes' testimony supported a reasonable inference of defect by the jury, Plaintiffs still fail to show that the purported defect caused A.H.'s injuries. Plaintiffs concede that causation cannot be directly demonstrated without expert review of the still missing steering wheel.[65] However, Plaintiffs argue that cumulative circumstantial and expert evidence alleging (1.) that the wheel dynamically detached, (2.) that it became a projectile, and (3.) that A.H. sustained traumatic head injury is enough to present a material factual dispute as to

---

[63]*See* Plaintiffs' Response at 7 ("How can one argue that no genuine issue of material fact remains when no evidence to show there is no defect has been presented?").

[64]*Wicker v. Ford Motor Co.*, 393 F.Supp.2d 1229, 1238 (W.D.Okla.2005) (*citing Adler v. Wal-Mart Stores Inc.*, 144 F.3d 664, 671 (10th Cir.1998)) ("[I]t is not defendants' burden to disprove plaintiff's theory, but only to show that there is an absence of proof to support plaintiff's claim").

[65]*See* Plaintiffs' Response at 9, 10, Docket No. 60 ("Plaintiffs cannot directly prove that the wheel hit A.H. in the head causing death").

causation suitable for jury consideration.[66] The Court disagrees.

In order to defeat summary judgment, Plaintiffs must offer evidence of probable causation in order to create a question of material fact that can be presented to a jury.[67] Plaintiffs fail to do so, offering a "connect-the-dots" circumstantial theory that ultimately presents a theory of *possible* causation, without even opinion evidence to support that theory. Plaintiffs allege that the steering wheel struck A.H. in the head causing his injuries, but Plaintiffs offer no evidence that the steering wheel came into contact with A.H. or any of the other passengers.[68] The steering wheel in question remains missing, and Plaintiffs admit that, as a result, causation "cannot now ever be definitively determined."[69] Plaintiffs can only definitively state that A.H.'s head came into contact with *something* and that something must have been the steering wheel.[70]

Without expert testimony supporting Plaintiffs' contention that the steering wheel caused A.H.'s injury, the question of whether A.H.'s injuries were caused by the alleged defect, or from the

---

[66]*Id.* at 11.

[67]*Dutsch,* 845 P.2d at 191 (*internal citations omitted*) ("However, the mere possibility that a defect caused the injury is not sufficient. The trial court properly instructed the jury in this area with Instruction # 8 which stated that the jury's 'decision must be based upon probabilities, not possibilities'").

[68]*Id.*

[69]*See* Plaintiffs' Motion for Extension of the Discovery Deadline and All Other Remaining Deadlines, and for Continuance and Resetting of the Pretrial and Trial Dates at 4, n.1, Docket No. 47.

[70]*See* Plaintiffs' Response at 11, Docket No. 60. The Court notes that Mayes, Plaintiffs' sole expert in this area, failed to do any case specific testing, full accident reconstruction, computer generated recreations or occupant kinematics study within the discovery period. *See* Mayes Deposition 11: 15-22; 81:14-16; 82:10-15; 82:23-25; 83:8-15. Performing any or all of these typical tests, despite the absence of the steering wheel, may have moved Plaintiffs' theory from the realm of pure speculation into the realm of probability.

sheer severity of the accident, is far too speculative to present to a jury.[71] Regardless of whether or not Mr. Mayes' testimony somehow demonstrates a material question of fact as to defect, Plaintiffs still fail to raise an issue of material fact suitable for jury determination on the element of causation. In either case, summary judgment in favor of the Defendant on Plaintiffs' manufacturers' products liability claims is appropriate.[72]

2. Simple Negligence Claim

To prevail on their negligence claim, Plaintiffs must show (1) that Defendant had a duty to protect A.H. from injury through the proper design and/or manufacture of the vehicle, (2) that Defendant breached that duty, and (3) that Defendant's breach proximately caused the injuries to A.H.[73] As with their products liability claim, Plaintiffs lack proof as to either causation or breach of the duty to properly design and/or manufacture. However, Plaintiffs' invocation of *res ipsa loquitur* is appropriately considered in their claim of simple negligence.[74]

The doctrine of *res ipsa loquitur* is a rule of evidence "which, if applicable, allows an inference of negligence [on the part] of the defendant from the mere fact that an accident

---

[71]*See Nash,* 153 P.3d at 75 (allowing the jury to speculate as to causation is error).

[72]The Court similarly rejects Plaintiffs' attempted application of *res ipsa loquitur* to defeat summary judgment on the products liability claims. Plaintiffs' Response at 9, Docket No. 60. In Oklahoma, the doctrine of *res ipsa loquitur* has never been applied to cases based on manufacturers' products liability, and it is not within the purview of this Court to do so now. *See Dutsch,* 845 P.2d at 190.

[73]*See Berman v. Laboratory Corp. of Amer. Inc.,* 2011 OK 106, ¶ 16, - - P.3d - -; *Consolodated Grain and Barge Co. v. Structural Systems Inc.,* 2009 OK 14, ¶ 9 n.8, 212 P.3d 1168, 1171 n.8.

[74]*See supra* note 69.

happened."[75] Whether *res ipsa loquitur* applies in a given case is a question of law.[76] The doctrine's purpose "is to aid a plaintiff in making a *prima facie* case under circumstances where direct proof of negligence is beyond the power of the plaintiff but within the power of the defendant."[77]

However, "[b]efore the doctrine of *res ipsa loquitur* may be invoked to justify the inference of negligence on the part of the defendant, the plaintiff must prove what caused the damage, and that the 'thing' causing said damage was under the control or management of the defendant or his servants."[78]

Plaintiffs contend that the application of *res ipsa loquitur* is justified because proof of negligence lies in either the missing steering wheel or in documents that are either in Defendant's sole control or untranslated at the time of the report.[79] Plaintiffs go on to suggest that the Court infer the wheel was the cause of the injury because "there is no evidence that anything else in the vehicle compartment became a projectile."[80]

In order to justify the application of the *res ipsa loquitur* inference of negligence, Plaintiffs must first show what caused the damage. Plaintiffs claim that the injury was caused when the steering wheel, the "sole projectile" detached from the steering column and struck A.H., ultimately

---

[75]*Dutsch,* 845 P.2d at 190 (citing *Sisson v. Elkins*, 801 P.2d 722, 724 (Okla.1990)).

[76]*Qualls v. U.S. Elevator* Corp., 1993 OK 135, ¶ 7, 863 P.2d 457, 460.

[77]*Dutsch,* 845 P.2d at 190 (citing *Sisson v. Elkins*, 801 P.2d 722, 724 (Okla.1990)).

[78]*Seay v. General Elevator Co.*, 1974 OK 63, ¶ 16, 522 P.2d 1022, 1027 (*internal citations omitted*).

[79]Plaintiffs' Response at 9-10.

[80]*Id.* at 11.

15

resulting in the child's death.[81] Plaintiffs contend that, because the steering wheel is missing, direct proof of causation is outside their reach. However, Plaintiffs offer no proof that A.H. was even struck by a projectile, only that the child suffered a "traumatic brain injury" caused by "complications of blunt force injuries" during the course of a violent collision between a 1999 Kia Sephia and an eighteen-wheeler.[82]

The Court accepts Plaintiffs' unopposed contention that the steering wheel detached dynamically and became a projectile. The fact remains that Plaintiffs offer no proof that A.H. was struck by any projectile. Without proof A.H. was struck, the Court must infer that the traumatic brain injuries were caused by the steering wheel, to the exclusion of all other possible factors in this violent collision, before it can reach whether *res ipsa loquitur* applies. Only after this preliminary inference can the Court apply the *res ipsa loquitur* inference that the detachment was a result of Defendant's negligence. The Oklahoma courts are clear that the doctrine of *res ipsa loquitur* does not permit the preliminary inference as to causation, therefore Plaintiffs' attempt to invoke *res ipsa loquitur* necessarily fails.[83]

Furthermore, the Court finds Plaintiffs lack proof on the other fundamental element of the *res ipsa loquitur* inquiry, namely that the "thing" allegedly causing the injury "was under the control or management of the defendant or his servants."[84] At the time of the accident, the subject

---

[81]*Id.* at 9-11.

[82]*See id.* at 11; Certificate of Death, Docket No. 60-2; Discharge Documentation, Docket No. 60-3.

[83]*Seay* 522 P.2d at 1027 (*internal citations omitted*) ("[T]he doctrine does not go to the extent of implying that one may, from the mere fact of the injury, infer what physical acts produced the injury").

[84]*Id.* (*internal citations omitted*).

automobile, and necessarily all of its component parts, had been out of Defendant's direct control and management for more than ten years. Further, Plaintiffs have not claimed that, at the time of the accident, Defendant was responsible in any way for the care and maintenance of the automobile. Therefore Plaintiffs have not, and likely cannot, establish that the automobile was under the control of the Defendant or its servants as is required by the doctrine.

Plaintiffs lack any evidence as to both injury causation and breach of the duty to properly design and/or manufacture. Similarly, Plaintiffs lack any evidence of either the causation or control elements required to invoke *res ipsa loquitur*. In light of these evidentiary deficiencies, Plaintiffs do not present a *prima facie* case for simple negligence and therefore do not present sufficient evidence to prevail on a negligence theory at trial. As a result, Defendant is entitled to summary judgment on Plaintiffs' claims of simple negligence.

## **CONCLUSION**

For the reasons set forth above, Defendant Kia Motors Corporation's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Eric Mayes is **DENIED**.[85] Defendant Kia Motors Corporation's Motion for Summary Judgment is **GRANTED**.[86]

IT IS SO ORDERED this 12th day of January, 2012.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma

---

[85] Docket No. 53.

[86] Docket No. 44.